**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| *Plaintiff* | § | |
| | § | SA-22-CR-00151-XR |
| -vs- | § | |
| | § | |
| (1) EDUARDO GILDARDO NOYOLA | § | |
| MUNOZ, | § | |
| *Defendant* | § | |

## ORDER

On this date the Court considered United States Magistrate Judge Richard B. Farrer's Report and Recommendation in the above-numbered and styled case, filed June 15, 2022 (ECF No. 40) concerning the United States' motion for forfeiture of bail (ECF No. 36), and Defendant's objections thereto (ECF No. 41). After careful consideration, the Court **ACCEPTS** the Magistrate Judge's recommendation that the motion be **GRANTED**.

## BACKGROUND

Defendant Eduardo Gildardo Noyola Munoz was arrested on March 16, 2022, in connection with a Complaint charging him with possession with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(B). After his arrest, Defendant suffered from severe hyperkalemia (potentially deadly high blood potassium) because he missed his dialysis treatment, which he requires three times per week to treat his end-stage renal disease. *See* ECF No. 39-3 at 11, 21. Defendant appeared at his initial hearing in dire condition and was hospitalized later that day.

The Magistrate Judge rescheduled the detention hearing set for March 22 in light of the hospitalization. ECF No. 9. Defendant appeared at his detention hearing from the hospital by Zoom on March 25 and, following a continuance to allow Pretrial Services to conduct further investigation into the case, on March 30. *See* ECF No. 20.

The detention hearings primarily concerned flight risk, focusing on two major issues. First was Defendant's immigration status. Information introduced at the hearings indicated that Defendant would face the prospect of an immigration detainer being lodged against him on or after May 10, 2022, when his lawful status in the country expired. At the time of the March 25 and 30 hearings, however, no such detainer was in place and Defendant was lawfully present in the United States. Second, Defendant was, at the time of his arrest, receiving regular dialysis in Piedras Negras, Mexico, immediately across the border from Eagle Pass, Texas. Aside from the immigration issues, Defendant also presented a risk of flight because of the serious drug-distribution charges against him and his significant ties to Mexico.

Still, several other factors counseled *against* pretrial detention: (1) Defendant's lack of any criminal history; (2) his alleged minor role as solely a courier in the charged offense, (3) his extremely supportive family members who attended multiple hearings in person; (4) the availability of a place of residence in the United States, a third-party custodian and surety; (5) Defendant's serious medical condition that tethers him to a location where he can receive regular dialysis treatments, and (6) the availability of a clinic in Eagle Pass that could provide dialysis in the United States. ECF No. 40 at 2.

The Magistrate Judge ultimately denied the Government's motion to detain, ordered pretrial release, and granted an unsecured bond of $75,000, with Defendant's sister, Margarita Noyola Munoz, serving as the surety. *See* ECF Nos. 18, 19, 30. The Magistrate Judge explained

that pretrial release was possible only because Ms. Noyola was willing to sign on the bond with the expectation that the Government would move for bond forfeiture if Defendant were to abscond. Defendant stated that he understood, as did the surety. ECF No. 40 at 3.

One of the original conditions of Defendant's pretrial release was placement in a halfway house. But Pretrial Services later informed the Magistrate Judge that the halfway house could not accommodate Defendant due to his medical condition and the availability of only top bunks. *See* ECF No. 19 at 1. Thus, the Magistrate Judge permitted Defendant to reside with his brother, Juan Noyola, in Eagle Pass, Texas, where Defendant could receive his dialysis treatments. *See* ECF Nos. 19, 30. Given Defendant's immigrations status and uncertainty about his ability to re-enter the United States in the future, he was not permitted to travel to Mexico under the conditions of his release. *See* ECF No. 19 at 2.

Defendant claims that, after his release, he struggled to find consistent and stable medical treatment because he had no legal status or work history in the United States and because the hospital where he sought treatment, Fort Duncan Regional Medical Center, did not offer outpatient dialysis. ECF No. 39 at 2. Within weeks of his release, Defendant absconded to Piedras Negras, alleging that he needed to resume dialysis in Mexico. Defendant's brother immediately advised United States Pretrial Services, *see* ECF No. 37, and Defendant contacted defense counsel and asked that she inform the Court, which she did. Defendant maintained contact with his attorney after his departure. Indeed, as late as May 9, 2022, when the Magistrate Judge held a bond-status conference, there was still hope that he would appear and self-surrender with the U.S. Marshals in San Antonio. ECF No. 40 at 3. Defendant, however, never surrendered, and there has been an active warrant for his arrest since May 10, 2022. *See* ECF Nos. 34, 38.

On May 10, the Government moved for judgment on forfeiture of bail. ECF No. 36. The Court referred the motion to the Magistrate Judge, who issued a report and recommendation on June 15, recommending that the Court revoke Defendant's pretrial release and issue an order of forfeiture against Defendant and the surety. ECF No. 40 at 4–5. In doing so, the Magistrate Judge concluded that Defendant's difficulty obtaining treatment, even if true, did not provide a reason to refrain from granting the requested relief because Defendant could have appeared at the May 9 bond-status conference to explain his treatment challenges and seek an additional modification to his bond conditions. *Id.* at 4. Instead, Defendant failed to appear and fled to Mexico.

The Magistrate Judge rejected Defendant's argument that "justice does not require bail forfeiture," noting the non-exhaustive factors that inform a court's decision concerning bail forfeiture. *Id.* at 4–5. The Magistrate Judge further observed that Defendant could still surrender to the Marshals, which would bring him, belatedly, back into compliance with the Court's orders. *Id.* at 5 (citing FED. R. CRIM. P. 46(f)(2)(A) & (g)). Because "[t]he possibility of forfeiture against Defendant and his surety continue[d] to create an important incentive for Defendant," the Magistrate Judge noted that an order of forfeiture would not be necessary if Defendant self-surrendered before the adoption of his report and recommendation. *Id.* at 5.

Defendant filed his objections to the report and recommendation on June 24, arguing that justice did not require bond forfeiture and that the recommendation required Defendant to choose between his health and his family's financial wellbeing. ECF No. 41.

**DISCUSSION**

**I.    Legal Standards**

    **A.    Standard of Review**

Any party who desires to object to a Magistrate Judge's findings and recommendations must serve and file written objections within fourteen days after being served with a copy of the findings and recommendations. 28 U.S.C. § 636(b)(1). Where the report and recommendation has been objected to, the Court must review the Magistrate Judge's recommended disposition de novo pursuant to 28 U.S.C. § 636(b)(1).

    **B.    Bond Forfeiture**

Under Rule 46(f) of the Federal Rules of Criminal Procedure, a court "must declare the bail forfeited if a condition of the bond is breached." FED. R. CRIM. P. 46(f)(1). However, the Rule also permits a court to set aside such a forfeiture, in whole or in part, if the surety surrenders the defendant into custody or if "it appears that justice does not require bail forfeiture." FED. R. CRIM. P. 46(f)(2)(A), (B). Imposition of forfeiture is a matter vested in the sound discretion of the district court. *United States v. Dunn*, 781 F.2d 447, 451 (5th Cir. 1986).

The purpose of a bail bond is not punitive. Its object is not to enrich the government or punish the defendant. *Dudley v. United States*, 242 F.2d 656 (5th Cir. 1957); *United States v. Davis*, 202 F.2d 621 (7th Cir. 1953). Nor can it be "used as a balm to soothe the disappointment resulting from the inability to punish and rehabilitate." *United States v. Parr*, 560 F.2d 1221, 1224 (5th Cir. 1977) (hereinafter, "*Parr I*"). Instead, the purpose of bail is to secure the presence of the defendant. *Smith v. United States*, 357 F.2d 486 (5th Cir. 1966).

When determining whether bail forfeiture should be set aside, courts consider a variety of factors, including: (1) the willfulness of the defendant's breach of the conditions of his release; (2)

the cost and inconvenience to the Government of regaining custody; (3) whether the surety helped apprehend the defendant; (4) the circumstances of the default, including whether actions by the Government increased the risk of a violation and whether the surety played any role in the defendant's breaching conduct; (5) the impact of the default on the prosecution, including the amount of delay, the stage of the proceedings, and the prejudice suffered by the Government; (6) the circumstances of bond determination, including the appropriateness of the bond amount and whether the surety was a professional bail bondsman or was a family member or friend of the defendant; (7) the public interest and necessity of effectuating the appearance of the defendant; and (8) any other pertinent mitigating circumstances. *See United States v. Parr*, 594 F.2d 440, 444 (5th Cir. 1979) (hereinafter, "*Parr II*") (citations omitted); *United States v. Famiglietti*, 548 F. Supp. 2d 398, 405 (S.D. Tex. 2008) (enumerating factors drawn from Ninth Circuit authority but finding "no reason to conclude" that Fifth Circuit precedent would lead to a different result).

## II.  Analysis

Defendant challenges the Magistrate Judge's report and recommendation on three grounds. First, Defendant asserts that, given his serious medical condition and difficulty obtaining treatment in the United States, his flight to Mexico was not a willful disregard of the Magistrate Judge's order to appear. Second, he argues that the Magistrate Judge failed to address many of Defendant's other arguments, which likewise dictate that justice does not require bail forfeiture. Finally, Defendant objects that bond forfeiture perversely requires him to choose between his health and his family's financial wellbeing. *See* ECF No. 41 at 4.

Whatever the purpose of Defendant's flight to Mexico, it was clearly a willful violation of the terms of his release, which explicitly forbade him from traveling to Mexico. *See* ECF No. 19 at 2. Defendant's concern that he "would not receive care if he could not pay the bills" does not

6

excuse his default. ECF No. 41 at 6. There is no reason to believe that adequate medical care is simply unavailable to Defendant anywhere in the Western District of Texas. While the treatment plan proposed by Fort Duncan may have been unduly burdensome from Defendant's perspective, he could have sought additional relief from the Magistrate Judge as he searched for more consistent care elsewhere. The Magistrate Judge had already modified the conditions of his release once to accommodate his medical needs. *See* ECF No. 19. Defendant also could have returned to federal custody. Despite his conclusory assertion that "[t]he Marshals and the Karnes detention facility are unsurprisingly not equipped to adequately manage Noyola's unusual health concerns," Defendant concedes that, prior to his release on bond, the Government was paying for his treatment at University Hospital. *See* ECF No. 41 at 2 ("At Noyola's bond hearing—held from the University Hospital—it became clear his needs were overwhelmingly costly for the Government."). Indeed, the Government must provide for the basic human needs of pretrial detainees, including medical care. *See Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001).[1] Given the available alternatives, Defendant's medical condition does not obviate or mitigate the willfulness of his breach. Accordingly, this factor weighs in favor of forfeiture.

Defendant further objects that the Magistrate Judge failed to address his arguments as to other factors bearing on bond forfeiture, including the Government's role in increasing the risk of default, the surety's role in the default, the cost and prejudice to the Government, the surety's status, and the appropriateness of the bond amount. *See* ECF No. 41 at 6–8. Indeed, the report and

---

[1] The Constitution requires humane conditions of confinement, which includes the receipt of adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Although a convicted prisoner's right to medical care springs from the Eighth Amendment's prohibition on cruel and unusual punishment, *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), a pretrial detainee's rights arise under the Due Process Clause of the Fifth Amendment. *See Edwards v. Johnson*, 209 F.3d 772, 778 (5th Cir. 2000); *see also Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)). As a practical matter, however, there is "no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care." *Gibbs*, 254 F.3d at 548. Accordingly, the same standards apply under both amendments. *Id.*

recommendation does not address any of these factors individually, instead concluding that, collectively, "Defendant's arguments are unconvincing, as the relevant considerations here weigh in favor of forfeiture, not against it." ECF No. 40 at 5. The Magistrate Judge's failure to articulate how these factors supported forfeiture does not mean that his conclusion was incorrect, however. In reviewing the Magistrate Judge's recommended disposition de novo, the Court will address the factors raised in Defendant's objections.

Defendant first asserts that the Government's action in releasing Defendant from University Hospital increased the likelihood that he would violate the conditions of his release by returning to Mexico for care, while his sister, the surety, was not involved in his flight to Mexico in anyway.[2] ECF No. 41 at 6–7. As previously noted, however, before Defendant's release on bond, the Government was paying for his treatment at University Hospital. Defendant does not argue that the medical treatment he received at University Hospital was in any way inadequate. Instead, he simply asserts that neither the Marshals nor the Karnes detention facility "have an endless supply of resources to expend on Noyola's care." *Id.* at 7. While the Court addresses the costs to the Government below, it appears that neither the Government nor the surety appears to have played a role in Defendant's default.

Turning to the costs and prejudice to the Government, Defendant asserts that:

Noyola's return to Mexico has not cost the Government anything beyond writing the bail-forfeiture motion. To the contrary, while he was detained, Noyola would have caused a significant burden on the Marshals resources, both expensive-wise and personnel-wise. The frequent hospitalization, medical care, and treatment would have been a significant taxpayer burden. Thus, ironically, Noyola's actions saved governmental resources, not taxed them.

*Id.* at 7.

---

[2] Indeed, while Defendant's sister has been unable to physically apprehend Defendant, she has evidently urged him to return for his court hearing. *See* ECF No. 41 at 6–7.

As a preliminary matter, the Court notes that Defendant has not yet self-surrendered or otherwise been apprehended by the Government. Thus, it is premature to assess the cost to the Government of returning custody or of any prejudice suffered by the Government as a result of the delay in the proceedings. Moreover, the Fifth Circuit has cautioned that "the cost and delay factors are not controlling," especially "in cases of willful failure to appear." *United States v. Cervantes*, 672 F.2d 460, 462 (5th Cir. 1982). If forfeiture were limited to the government's expenses, "[t]he central purpose of bail—to ensure the defendant's appearance—could easily be defeated." *Id.* "Many defendants might reasonably decide that the benefits of freedom outweigh the potential cost of reimbursing the government for its expense in recapturing them." *Id.*

The Government evidently made the calculation that the public interest was better served by prosecuting Defendant—and potentially absorbing the full costs of his medical care during his detention—than by permitting him to evade the charges and return to Mexico. Indeed, as a practical matter, prosecuting a crime is almost always more expensive in the short run than dropping the charges altogether, especially where the defendant flees to another country. But Defendant is certainly not in a position to substitute his own judgment for the Government's in determining how best to allocate such resources. Nor is the Court. In short, any consideration of the Government's costs—either those incurred in apprehending and detaining Defendant or those avoided by his release from custody and flight to Mexico—is outweighed by Defendant's willfulness in violating the conditions of his release. *Id.*

As to the circumstances of the bond determination, Defendant argues that the surety's status and the allegedly excessive bail amount both cut against forfeiture. Defendant correctly notes that the surety's status as a family member—rather than a professional bondsman—weigh against forfeiture. *Famiglietti*, 548 F. Supp. 2d at 419. Defendant further asserts that the bail

amount of $75,000 is excessive under the Eighth Amendment. ECF No. 41 at 8. While the Court does not disagree with Defendant that "[t]his is a great deal of money, particularly to impose on this indigent," *id.* at 8, "courts are not permitted to take into account the severity of the financial hardship that a surety would suffer [in] deciding whether a surety has shown that 'justice does not require bail forfeiture.'" *Famiglietti*, 548 F. Supp. 2d at 409. "[I]f severity of financial hardship were a ground for setting aside a forfeiture, or for significantly reducing the amount owing, courts could not assume that sureties with limited means would believe their bond commitments were real." *Id.* at 409–10. Indeed, "if courts are to give reality to the rights of defendants that that Act confers, they must not permit bond commitments, so essential to pretrial release, to be eviscerated by the magnitude of the potential impact on the surety." *Id.* at 410. The bond amount does not appear to be excessive on its face. Thus, this factor does not weigh in favor of setting aside the forfeiture.

Finally, Defendant argues that, to the extent the report and recommendation "incentivized Noyola to return to the United States," it forces Defendant to make an impossible choice between receiving life-saving medical care and his family's financial wellbeing. ECF No. 41 at 8. The Court disagrees. As of the date of this order, Defendant has been in Mexico for over two months since the filing of the Magistrate Judge's recommendation that forfeiture would not be necessary if Defendant self-surrendered prior to the entry of judgment ordering bond forfeiture. *See* ECF No. 40 at 5. Despite his ample opportunity to do so, Defendant has not self-surrendered to the Marshals or arranged for reliable care in the United States consistent with the conditions of his release. The purpose of bond is to secure the presence of the defendant. *Smith*, 357 F.2d at 486. Defendant's apparent disappointment with the medical care system in the United States cannot overcome his willful default in violation of this purpose.

**CONCLUSION**

For the foregoing reasons, the Court adopts the Magistrate Judge's report and recommendation, and the Government's Motion for Judgment on Forfeiture of Bail (ECF No. 36) is **GRANTED**.

It is therefore **ORDERED, ADJUDGED** and **DECREED** that the default of Defendant Eduardo Gildardo Noyola Munoz is entered into the record of this cause, and the bond of Defendant Eduardo Gildardo Noyola Munoz and Margarita Noyola Munoz, surety is hereby forfeited. If Defendant surrenders before full enforcement against the surety is complete, the Court will consider options for providing relief to the surety from the order of forfeiture.

It is so **ORDERED**.

SIGNED this August 16, 2022.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE